**In re Vincent William MICHELS, a/k/a Vince Michels, a/k/a Vincent W. Michels, Debtor.**

**Maynard Savings Bank, Creditor— Appellant,**

v.

**Vincent William Michels, Debtor—Appellee.**

**BAP Nos. 02–6005NI, 02–6008NI.**

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted Oct. 31, 2002.

Filed Dec. 20, 2002.

John W. Hofmeyer, Oelwein, IA, for appellant.

Thomas L. Fiegen, Cedar Rapids, IA, for appellee.

Before KOGER, Chief Judge, DREHER and FEDERMAN, Bankruptcy Judges.

DREHER, Bankruptcy Judge.

These are two consolidated appeals. The first appeal is from two orders of the bankruptcy court, one dated December 18, 2001, setting a bar date for the filing of objections to an untimely proof of claim filed by Maynard Savings Bank ("MSB"), and the second dated January 4, 2002, denying two motions by MSB for further relief from that order. The second appeal is from the bankruptcy court's order of January 28, 2002, in which the court confirmed the Chapter 13 plan of Debtor, Vincent W. Michels ("Debtor"), over the objection of MSB and disallowed MSB an informal proof of claim.

## FACTS AND PROCEDURAL HISTORY

On April 23, 2001, Debtor filed his Chapter 13 petition. The bankruptcy court set August 29, 2001, as the last day to file proofs of claim.

On April 30, 2001, Debtor filed a motion seeking injunctive relief requiring MSB to return collateral it had repossessed prepetition. The motion asserted that MSB had a secured claim of approximately $196,000.00, which was adequately protected by an equity cushion in excess of $500,000.00. MSB objected, claiming it lacked adequate protection for the value of its collateral. By order dated May 4, 2001, the bankruptcy court granted Debtor's request for injunctive relief and for turnover of the repossessed property. In its order the bankruptcy court found:

> MSB is a secured creditor who has not been paid its promised return from the proceeds of the farming operation. MSB became involved with Debtor in early 1998 when it advanced Debtor funds to purchase farming equipment for his operation. In exchange for the loan, Debtor granted MSB a first lien on the equipment and a second lien on the real estate owned by Debtor. Debtor

currently owes MSB $193,531.40 in connection with the loan, $35,000 of which was due and owing on March 15, 2001.

On May 29, 2001, Debtor filed his Chapter 13 plan ("plan"). The plan acknowledged that MSB's "allowed secured claim" was impaired. The cash flow statement appended to the plan stated:

> Maynard Savings Bank has a secured lien on the 200 acre farm, a first lien on the Shooky's Bar real estate and equipment, and a blanket first lien on all farm equipment, crops, crop proceeds, and miscellaneous vehicles with an outstanding balance of $193,531.40. The Bank lien on the vehicles is not perfected.

The plan proposed to pay MSB's allowed secured claim, plus interest at the rate of 7%, as well as attorney's fees and costs. The plan proposed to make payments directly to MSB at the rate of $1,000.00 a month from October 2001 through December 2001, $1,200.00 from January through April of 2002 and September through December of each year thereafter, and $1,000.00 a month from May through September of each year thereafter.[1]

MSB timely objected to confirmation. Specifically, MSB alleged that it was an oversecured creditor entitled to the contract interest rate of 10.5% on its claim and to payments of not less than $1,500.00 per month. MSB also objected to a proposed sale of its collateral without payment of the entire proceeds to it, and to a proposed balloon payment of the unpaid balance of its claim at the end of the 48 month plan.[2] The Chapter 13 Trustee and the Internal Revenue Service also objected to the plan.

In response to the objections, on July 31, 2001, Debtor filed a first amended plan, making only minor revisions in the treatment to MSB, but once again specifically acknowledging that MSB had a claim for $193,531.40, secured by the farm, Shooky's Bar, and farm equipment, crops, crop proceeds and certain vehicles. On August 31, 2001, MSB filed an objection in which it reiterated the objections it had previously made.

On October 31, 2001, the day of the confirmation hearing, Debtor amended the plan once again, and once again MSB ob-

---

1. The Debtor corrected his mistake of having two payments due in September in his subsequently amended plans.

2. The plan provided in pertinent part that:
   (d) In the event that Shooky's Bar is sold, the Maynard Savings Bank shall receive the first $100,000.00 of the net cash sales proceeds in return for the release of its mortgage and security interest in the contents of the Bar. In the event that Shooky's Bar is sold, the annual total of monthly payments to the Bank called for herein shall be reduced to one-half, representing the remaining secured claim against the farmland and machinery and equipment, commencing the first month after the closing on the sale of Bar. In the event that the sale of Shooky's Bar results in a net increase in Debtor Michels' monthly income, the net increase shall be paid to the Chapter 13 Trustee as disposable income.

   (e) All vehicles and farm equipment in the possession of the Maynard Savings Bank or its agent shall be surrendered to Debtor Vincent W. Michels at his farm homestead upon confirmation of the plan. In the event that vehicles or farm equipment are sold during the term of the plan, one-half (½) of the net proceeds shall be paid to the Maynard Savings Bank for the release of its lien, if any, and one-half (½) to the Trustee, for distribution under the plan. (Description of the collateral and its value followed.)
   (f) The Maynard Savings Bank lien on the 2001 and future crops shall be terminated in accordance with 11 U.S.C. § 552.
   (g) At the end of the forty-eight (48) month plan term, the remaining balance of the Maynard Savings Bank claim shall balloon and become due and payable in full.

jected. At the confirmation hearing MSB argued that the plan should not be confirmed because it was not feasible, it did not pay MSB an appropriate interest rate, and it improperly proposed to sell its collateral without paying the debt in full. During the course of the hearing, MSB's attorney asked the bankruptcy court to take judicial notice of the claim it had filed and the security documents appended thereto. Counsel expressed surprise when the bankruptcy court stated that there was no proof of claim from MSB on file. At the close of evidence, the bankruptcy court took the matter under advisement and gave the parties an opportunity to file briefs on the issues raised at confirmation, as well as the issue of the effect of MSB's failure to timely file a proof of claim. During the briefing period, on November 1, 2001, MSB filed a proof of claim for $201,785.07, plus accruing costs, attorneys' fees, and interest, and appended the security agreements and other papers supporting its secured position.

Subsequently, on December 18, 2001, at a continued hearing on confirmation, the bankruptcy court ruled that if the claim of MSB was allowed Debtor's plan would not be feasible and the case would be dismissed, but if the Debtor or another party-in-interest objected to MSB's late-filed proof of claim, the bankruptcy court would disallow it as late filed under 11 U.S.C. § 502(b)(9). Noting that because the claim was filed late, no one had an opportunity to object, the court set January 4,

2002, as the bar date for objecting to the claim. If disallowed, the court ruled, Debtor would not need to make any payments to MSB under the plan and the plan would be feasible and confirmed. The court also referenced authority for the proposition that filing an untimely secured claim exposed MSB to a possible loss of its protections under 11 U.S.C. § 506(d) in addition to a denial of any opportunity to participate in plan distributions.

Having considered its position in light of this construction, on December 21, 2001, MSB withdrew its proof of claim pursuant to Federal Rule of Bankruptcy Procedure 3006 [3] in favor of "rely[ing] upon its liens." On that same date, Debtor objected to the claim of MSB, but not on timeliness grounds. A flurry of motions followed.

First, on December 28, 2001, MSB filed a motion entitled "FRCP 59 Motion" requesting that the bankruptcy court answer several questions, including whether MSB was entitled to an informal proof of claim and whether its lien survived the bankruptcy under § 506(d). Second, on January 2, 2002, MSB filed another "FRCP 59 Motion" which mirrored the first one. On January 4, 2002, the bankruptcy court, having determined that both motions sought advisory opinions on matters not before the bankruptcy court, denied both motions, except to clarify that its December 18, 2001, order was not a judgment avoiding the liens. MSB's first appeal is

---

3. Fed. R. Bankr.P. 3006 states that:

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee elected pursuant to § 705(a) or appointed pursuant to § 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

from these orders of December 18, 2001, and January 4, 2002.

The saga continued when, on January 3, 2002, MSB filed a motion seeking clarification that its section 506(d) lien rights were preserved and then, on January 7, 2002, MSB filed a motion to be allowed an informal proof of claim. The bankruptcy court, clearly vexed by this series of motions, scheduled a hearing for January 23, 2002, on the January 3 motion to clarify, the January 7 motion to allow an informal proof of claim, and the Rule 3006 withdrawal of the formal proof of claim.

Following the hearing, the bankruptcy court entered an order allowing MSB to withdraw its formal proof of claim.[4] The bankruptcy court also denied the January 3 motion seeking clarification and denied the January 7 motion regarding the informal proof of claim. The bankruptcy court held that MSB could not participate in the plan because MSB did not have an allowed secured claim. The bankruptcy court then denied MSB's request for an informal proof of claim concluding that MSB had failed to meet its burden of establishing the elements of an informal proof of claim. The bankruptcy court found that the plan was now feasible and directed the Chapter 13 Trustee to prepare an appropriate order of confirmation. Shortly thereafter, the order confirming the plan was entered. MSB filed its second appeal from this order, which appeal, while premature, was nevertheless timely.[5]

### DECISION

MSB raises several issues on appeal. First, it asserts that as a secured creditor it was not required to file a proof of claim in order to participate in distributions under the plan. It also asserts that the plan should not have been confirmed because Debtor delayed unnecessarily in filing his Chapter 13 plan, the plan proposes to sell MSB's collateral without paying MSB the amount of the debt in full, and the plan extends payments for a period of 48 months. It also argues that, if it was required to file a claim, it did so informally by the actions it took prior to the deadline for filing claims, and, accordingly, the plan is not confirmable for this reason alone.

Debtor's initial response is that MSB has no standing to appeal because it is not a creditor with an allowed claim and because the plan has been confirmed, payments are ongoing, and no stay pending appeal was obtained. On the merits, he asserts that all creditors, secured and unsecured, must file proofs of claim in order to participate in any plan distributions. Accordingly, the plan was properly confirmed because, absent the need to pay MSB, the plan was feasible. He further contends that the plan properly proposed payments over four years and properly proposed to sell MSB's collateral without paying the debt in full. Debtor also argues that MSB's actions taken prior to the August 28, 2001, claim filing deadline were inadequate because MSB did not append the documents evidencing its security interest in any papers it filed prior to the claim filing deadline. He asserts that it is not enough to object to a plan. Further he urges, if MSB had an informal claim, it withdrew that claim in response to the court's December 18, 2001 order.

---

**4.** An administrative panel of this court dismissed MSB's first appeal as moot on the grounds that MSB withdrew its filed formal proof of claim and the first appeal related to issues regarding the formal proof of claim.

**5.** Although MSB prematurely filed its second notice of appeal, the appeal is considered timely under Federal Rule of Bankruptcy Procedure 8002(a) and an administrative panel of this court so ruled.

## I. STANDING AND MOOTNESS

■ Debtor contends that MSB was not a "party in interest" since it did not have an allowed claim. If MSB does not have standing, then this court does not have jurisdiction to decide any other issues raised on appeal. *Starr v. Mandanici*, 152 F.3d 741, 747 (8th Cir.1998) (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (" 'Without jurisdiction the court cannot proceed at all in any cause.' ") (*quoting Ex parte McCardle*, 74 U.S.(7 Wall.) 506, 514, 19 L.Ed. 264 (1868))). Standing is an element of federal subject matter jurisdiction which cannot be waived and may be raised at any time by a party or by the court. *See, e.g., Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir.1998).

■ Usually, only "parties in interest" may object to confirmation of a plan. 11 U.S.C. § 1324 (2000). "Without an allowed claim, most courts hold that a party generally does not have the requisite pecuniary interest to be a 'party in interest.' " *In re Larson*, 245 B.R. 609, 614 n. 1 (Bankr.D.Minn.2000)(*citations omitted*). Nevertheless, as we discuss below, MSB timely filed its objection to the plan, and such objection may serve as an informal proof of claim conferring standing on MSB to object to confirmation and standing to appeal the order confirming the plan. *Id.*

■ Additionally, a party to an appeal may have standing if the order challenged causes some cognizable injury, i.e., that it is "aggrieved" by the order. *Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.)*, 138 F.3d 1254, 1259 (8th Cir.1998) (*quoting Spencer v. Casavilla*, 44 F.3d 74, 78 (2d Cir.1994)). MSB is clearly "aggrieved" by the denial of its motion for an informal proof of claim. Its collateral may be liquidated without payment of its liens and it may be denied monthly payments on its debt for four years.

Therefore, MSB had standing as a "party in interest" to object to confirmation of Debtor's plan and standing to appeal the order confirming the plan. Furthermore, MSB was a party "aggrieved" by the denial of its motion to be allowed an informal proof of claim with standing to appeal that order.

■ Debtor also argues that the failure of MSB to obtain a stay pending appeal renders this appeal moot. In *In re Continental Airlines*, 91 F.3d 553 (3d Cir.1996), the Third Circuit established the doctrine of equitable mootness under which an appellate court may dismiss an appeal from a bankruptcy court as moot "even though effective relief could conceivably be fashioned, [when] implementation of that relief would be inequitable." *Id.* at 559.

> Factors considered by courts to determine whether an appeal is equitably moot in the context of a reorganization bankruptcy include: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments.

*Williams v. Citifinancial Mortgage Co. (In re Williams)*, 256 B.R. 885, 897 n. 11 (8th Cir. BAP 2001) (*citing Continental*, 91 F.3d at 560).

■ Obviously, granting MSB the relief it requests after confirmation effectively destroys the plan, but under these circumstances the plan is not substantially consummated to preclude MSB from seeking relief from the order confirming the plan. Unlike a chapter 11, Debtor must complete

the plan to obtain a discharge. *See* 11 U.S.C. § 1328(a). "[T]he foremost consideration is whether the reorganization plan has been substantially consummated." *In re PWS Holding*, 228 F.3d 224, 236 (3d Cir.2000). Completion of Debtor's plan is still three years away and not substantially complete. We find that the doctrine of equitable mootness does not apply in this case.

## II. The Issue

Having decided the preliminary matters, we turn to the merits and, in that context, first to a determination of which issues need to be addressed. While appellant raises a number of questions on appeal, we decide only one because it subsumes all others.

Basically, MSB is asserting one of two arguments: either that it was not required to file a proof of claim in order to participate in payments under the Chapter 13 plan or that, if it was, it actually did so informally by taking action prior to the bar date for filing claims that demonstrated the amount and nature of its claim and its intention to pursue that claim. If we determine that there was in fact an informal proof of claim, the plan is admittedly not confirmable because Debtor cannot make the payments required under the plan to MSB and his other creditors. And, if that is so, we need not address any of the other challenges to the confirmability of the plan, such as whether the plan properly proposed to sell MSB's collateral without paying it in full or extended for too long a time period.

For the reasons stated below, we have determined to reverse the bankruptcy court's determination that the actions of MSB did not amount to an informal proof of claim. Accordingly, the plan is not confirmable. All other issues are rendered moot and need not be addressed.

## III. Standard of Review

The proper standard of review of a bankruptcy court's decision to disallow an informal proof of claim differs among courts. Some apply the clearly erroneous standard. *See United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1218 (11th Cir.1985); *Myers v. Halverson (In re Irvine)*, 105 B.R. 502, 503 (D.Minn.1989) (bankruptcy court's decision to allow informal proof of claim reviewed under clearly erroneous standard). Others hold the issue is a matter of law subject to *de novo* review. *See, e.g., Anderson–Walker Indus., Inc. v. Lafayette Metals, Inc. (In re Anderson–Walker Indus., Inc.)*, 798 F.2d 1285, 1287 (9th Cir.1986). We need not decide the proper standard, since under the more strict standard of review, we find that the bankruptcy court clearly erred in determining that MSB did not qualify as a claimant with an informal proof of claim.

## IV. Informal Proof of Claim

The elements necessary to achieve status as an informal proof of claim are well known. To qualify as an informal proof of claim, the document must state the nature and amount of the claim as well as indicate the claimant's intent to hold the debtor liable and pursue the claim. *In re Larson*, 245 B.R. 609, 614 n. 1 (Bankr.D.Minn.2000)(*citing First Am. Bank & Trust v. Butler Machinery Co. (In re Haugen Constr. Servs., Inc.)*, 876 F.2d 681, 682 (8th Cir.1989)). "If the record made within the statutory period, formal or informal, disclosed facts showing an assertion of a claim against the estate and an intention by the claimant to share in its assets, there would be a basis for the proposed amendment." *First Am. Bank & Trust v. Butler Machinery Co.*, 876 F.2d

at 682. We find that MSB made a sufficient record.

■ Prior to the August 29, 2001, deadline for timely filing a claim, MSB filed a response to Debtor's motion for injunctive relief, an objection to confirmation of Debtor's initial Chapter 13 plan, an objection to Debtor's first amended plan, and a separate memorandum on legal points and authorities. In doing so, MSB made clear its desire to have its rights dealt with in Debtor's chapter 13 reorganization and the bankruptcy court had the authority to establish the nature and amount of MSB's claim for purposes of finding an informal proof of claim based upon the evidence presented by MSB or Debtor in these proceedings. *See In re Pizza of Hawaii, Inc.*, 40 B.R. 1014 (D.Haw.1984) *aff'd*, 761 F.2d 1374 (9th Cir. 1985). Furthermore, during the course of these proceedings, MSB also made clear the amount of interest it expected and the monthly payments it sought to be paid. MSB objected to any sale of the real estate and personal property in which it claimed a lien until it had been paid in full and stated clearly its desire to pursue its rights against collateral.

In part as a result of these filings, on May 4, 2001, well in advance of the claims filing deadline, the bankruptcy court found that MSB held a first lien on Debtor's equipment and a second lien on real estate. The bankruptcy court also found the precise amount of the debt and the amount of arrearages. Debtor, on his part, also acknowledged the amount of the claim, the secured nature of the claim, and how he proposed to pay the claim.

MSB's actions, coupled with a specific finding by the bankruptcy court as to the existence of a lien in favor of MSB and the amount owed, and further coupled with Debtor's consistent articulated willingness to pay the claim, are sufficient to establish the elements of an informal proof of claim. The documents filed by MSB and the facts found by the court prior to the deadline, established both the nature and amount of the claim and MSB's intent to hold Debtor liable for and to pursue the claim. *In re Larson*, 245 B.R. at 614 n. 1 (*citing First Am. Bank & Trust v. Butler Machinery Co. (In re Haugen Constr. Servs., Inc.)*, 876 F.2d 681, 682 (8th Cir.1989)); *see also In re Donovan Wire & Iron, Co.*, 822 F.2d 38, 39 (8th Cir.1987).

■ Debtor argues, however, that MSB's informal proof of claim should not be allowed because MSB never appended the documents establishing its security interest to any document filed in court before the last date to file a claim. Ordinarily, evidence of a perfected security interest should be attached to a proof of claim. *See* Fed. R. Bankr.P. 3001(d). Given the extensive and vociferous actions MSB took, however, combined with a specific finding by the bankruptcy court that MSB possessed liens on Debtor's property, we do not believe this omission was sufficient to deny MSB an informal claim. *See, e.g., In re Immerfall*, 216 B.R. 269, 272 (Bankr. D.Minn.1998). Further, Debtor argues that MSB withdrew its final proof of claim on December 21, 2001, thus negating any informal proof of claim. But, the record amply demonstrates that the withdrawal was done only after the bankruptcy court warned it of the possible consequences the bankruptcy court thought might be suffered if it did not do so. Under the circumstances, the withdrawal of the written proof of claim did not affect its position as an informal claimant.

From a review of the entire record of this case, we sympathize with the rising frustration level of the bankruptcy judge, but we believe the bankruptcy court erred in not allowing the informal claim, especially in light of the fact that no one,

including Debtor, ever timely objected to MSB's tardily filed formal proof of claim on timeliness grounds. Certainly, from the moment the case was filed, or soon thereafter, every party participating in this case knew the amount, extent, and nature of the MSB's claim and of MSB's intention to vigorously pursue its position as a secured creditor.

It must also follow that, since the bankruptcy court found, and the parties agree, that Debtor's plan was not feasible and could not be confirmed if MSB participated in distribution under the plan, the order confirming the Chapter 13 plan must be reversed and confirmation of Debtor's plan must be denied. Because MSB is thus allowed a timely filed informal proof of claim and confirmation of the plan is denied, all other issues raised by Debtor are considered moot.

ACCORDINGLY, we reverse the decision of the bankruptcy court.